# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JIMMIE McNAIR,              )
                                 )
             Plaintiff,      )
                                 )
     v.                        )          Civil Action No. 17-0404 (TSC)
                                 )
U.S. PAROLE COMMISSION, *et al.*,   )
                                 )
             Defendants.   )

## MEMORANDUM OPINION

This matter is before the court on Defendants' Motion to Dismiss Second Amended Complaint (ECF No. 42), Plaintiff's Motion in Opposition to Defendants['] Answer to Plaintiff['s] Amended Complaint (ECF No. 45) and his Motion under Writ Madam[us] to Have Prompt Evidentiary Hearing on the Matters at Hand That Can Be Viewed By Transcripts (ECF No. 46). For the reasons discussed below, the court grants Defendants' motion, dismisses Plaintiff's Second Amended Complaint in its entirety, and denies Plaintiff's motions as moot.

## I. BACKGROUND

### A. Plaintiff's Criminal Conviction, Sentence, and Supervised Release

On October 5, 2010, police arrested Plaintiff for unlawful distribution of a controlled substance (cocaine). (*See* Mem. of P. & A in Support of Defs.' Mot. to Dismiss ("Defs.' Mem."), Ex. 1 at 2.) A jury found Plaintiff guilty, and on December 6, 2011, the Superior Court of the District of Columbia imposed a 48-month term of imprisonment followed by a five-year term of supervised release. (*Id.*, Ex. 2 at 1.) The supervised release term commenced on May 12, 2014, and Plaintiff was to remain under the supervision of the Court Services and Offender

Supervision Agency for the District of Columbia ("CSOSA"), *see* D.C. Code § 24-133(c)(2),

through May 11, 2019, (Defs.' Mem. Ex. 2 at 1.)  Barely four months passed when Plaintiff

committed the first of many violations of the conditions of supervised release.  (*See generally id.*,

Ex. 3 at 1-2.)

On August 5, 2015, Jequan S. Jackson, Case Analyst with the United States Parole

Commission ("USPC"), recommended that a supervision revocation warrant be issued, (*id.*, Ex.

3 at 2.)   The USPC charged Plaintiff with seven violations of the conditions of his supervised

release based on the reports of Kyndall Johnson, Plaintiff's supervision officer ("CSO").[1]  (*See

id.*, Ex. 3 at 1-2.)  For example, Plaintiff's urine specimens tested positive for alcohol on two

occasions and for cocaine on 10 occasions, (*id.*, Ex. 3 at 1-2,) and he failed to comply with a

graduated sanction, use of a global positioning system tracking device, when he "failed to charge

his GPS as directed by his supervising officer," prior to his "remov[al] from the GPS program as

a result of a master tamper alert on 7/15/2015," (*Id.*, Ex. 3 at 2.)

Commissioner Charles Masserone signed the warrant on August 19, 2015.  (*Id.*, Ex. 3 at

3.)  A deputy United States Marshal executed the warrant on October 7, 2016 at the D.C. Jail

where Plaintiff was detained, (*id.*, Ex. 4 at 1,) following his arrest in the District of Columbia on

October 4, 2016, for distribution of a controlled substance (crack cocaine) and possession of a

---

[1]  According to the Warrant Application, Plaintiff violated a special condition of his release
(drug aftercare) as evidenced by two urine specimens testing positive for alcohol (Charge No. 1);
used dangerous and habit forming drugs as evidenced by 10 urine specimens testing positive for
cocaine (Charge No. 2); failed to submit to drug testing by [NOT?] submitting urine specimens
on 17 occasions (Charge No. 3); failed to comply with graduated sanctions (global positioning
systems, Charge No. 4); failed to report to his supervising officer (Charge No. 5); and violated a
special condition of his release (drug aftercare, Charge Nos. 6 and 7) by refusing to participate in
the Halfway Back 60-day drug aftercare program and the Re-Entry and Sanction Center drug
aftercare program.  (*See* Defs.' Mem., Ex. 3 at 1-2.)

controlled substance (crack cocaine), (*see id*., Ex. 5 at 1.)  Jackson supplemented the warrant

application by adding an eighth charge, a law violation, arising from Plaintiff's arrest.  (*Id*., Ex.

6.)

Hearing examiner Kelley conducted Plaintiff's probable cause hearing on October 14,

2016, and he found probable cause to detain Plaintiff pending a supervision revocation hearing.

(*See generally id*., Ex. 7.)  Rebecca Vogel of the Public Defender Service represented Plaintiff at

the probable cause hearing.  (*See id*., Ex. 7 at 1.)  In anticipation of a supervision revocation

hearing, Plaintiff had an opportunity to request the attendance of adverse witnesses.  (*Id*., Ex. 7 at

6-7.)  Notwithstanding notice that his "failure to make a request for the attendance of any

adverse witness is a waiver of [his] opportunity to confront and cross-examine that witness at a

revocation hearing," (*id*., Ex. 7 at 6,) Plaintiff did not request an adverse witness.

Hearing examiner Joseph M. Pacholski conducted Plaintiff's revocation hearing on

November 30, 2016, (*id*., Ex. 8 at 1,) at which CSO Kerri Guest-Uzzle testified, (*see generally

id*., Ex. 8 at 1-4.)  Plaintiff waived counsel and represented himself.  (*Id*., Ex. 8 at 1.)  Pacholski

noted Plaintiff's assertion that the USPC lacked jurisdiction over the matter and Plaintiff's

objection to the absence of adverse witnesses, particularly the lab technician who tested

Plaintiff's urine specimens and the technician who would have monitored his GPS device.  (*Id*.,

Ex. 8 at 2.)  Pacholski "pointed out to [Plaintiff] that he did not request . . . witnesses at the

Probable Cause hearing," (*id*., Ex. 8 at 2,) and that he waived counsel, (*id*., Ex. 8 at 1,) for the

revocation hearing.  Based largely on the CSO Guest-Uzzle's testimony and reports prepared by

CSO Johnson, Pacholski found that Plaintiff violated seven supervised release conditions

(Charge Nos. 1-7).  (Defs.' Mem., Ex. 8 at 4.)  The police officer who arrested Plaintiff on

October 4, 2016 did not appear at the revocation hearing, and Pacholski made no finding with respect to Charge No. 8 due to the lack of evidence. (*Id.*, Ex. 8 at 4.)

Pacholski recommended revocation of supervised release and Plaintiff's return to custody for a term of 22 months from the date of the warrant's execution. (*Id.*, Ex. 8 at 5.) His recommendation exceeded the ordinary guideline range of 12 to 16 months for the following reasons:

> Our subject argued every point and did not take responsibility for any of his behavior. Our subject did not provide any information as to why he was able to have 4 months of satisfactory compliance and then not comply with any terms other than he was sick and he feared for his safety. Our subject did not explain what steps he took to resume satisfactory compliance and did not feel he needed to explain other than he was sick. The subject's sickness was not an extended stay at a hospital and did not hinder his ability to contact his [community supervision officer]. Our subject did not appear he was amenable for supervision. Our subject did excuse his [Public Defender Service] attorney and wanted to represent himself. Our subject was upset that he did not receive a Probable Cause hearing within 5 days but did not explain how this delay hindered his ability to defend himself against the charges. Our subject is a poorer risk because he has 24 convictions and 10 commitments that are not fully accounted for in the SFS.
>
> Our subject after the hearing became irate and called the Examiner a number [of] racial terms. The subject then slammed a hearing room door and caused a security issue at the institution [prompting] staff to respond. Some of the incident could be heard in the hearing room and the record was activated again to secure the evidence[.]

(*Id.*, Ex. 8 at 5.)

Executive reviewer Lynne Jenkins, after listening to the last 20 minutes of the recording of the hearing, agreed that revocation was warranted and recommended a slightly higher sanction: a 26-month term of imprisonment. (*Id.*, Ex. 8 at 5.) She noted Plaintiff's October 4, 2016 arrest, and the "very poor attitude" Plaintiff exhibited "during and after the hearing," indicating that "he is not amenable to supervision." (*Id.*, Ex. 8 at 5.) The USPC concurred: it

revoked Plaintiff's supervised release and ordered his return to custody for 26 months.[2]  (*Id*., Ex. 9 at 1.)  Plaintiff sent four submissions to the National Appeals Board, which ultimately affirmed the USPC's decision.  (*Id*., Ex. 10 at 1.)

B. Plaintiff's Second Amended Complaint

Plaintiff filed his original complaint in the Superior Court on December 7, 2016.  (ECF No. 1-1.)  Defendants removed the case on March 7, 2017.  (ECF No. 1.)  This court construed the complaint as raising constitutional challenges to the supervision revocation proceedings, demanding monetary compensation for Plaintiff's alleged unlawful incarceration, and demanding Plaintiff' immediate release from custody.  Plaintiff amended his complaint, shifting focus from the USPC's actions to the validity of his underlying criminal conviction in the Superior Court. (*See generally* ECF No. 5.)  Subsequently Plaintiff filed documents (ECF Nos. 6, 8) purporting to add new parties and claims, and on June 19, 2017, Plaintiff filed a motion for leave to amend his complaint.  (ECF No. 7.)

Defendants filed their first motion to dismiss on September 29, 2017.  (ECF No. 16.) Because Plaintiff's amendments and other submissions had strayed so far from the claims set forth in his original complaint, the court denied Defendants' motion to dismiss without prejudice, as it appeared to be moot.  (ECF No. 21.)  In addition, the court allowed Plaintiff to file a second amended complaint encompassing all the claims he intends to bring, all the defendants against

_____

[2]  The USPC imposed a term of imprisonment calculated from the date of the warrant's execution, without regard to "street time."  Upon revocation of supervised release, Plaintiff "receive[d] no credit for time spent on supervised release, including any time spent in confinement on other sentences (or in a halfway house as a condition of supervised release) prior to the execution of the [USPC's] warrant."  28 C.F.R. § 2.218(c).

whom he makes his claims, and all the relief he demands. On February 16, 2018, Plaintiff filed a

document titled:

> Motion to bring Clarity to Plaintiff Allegations Under & or pursuant to 28 U.S.C. 1651 & or 42 U.S.C. § 1983. Plaintiff claims fall under either 28 U.S.C. 1651 & or 42 U.S.C. § 1983 or Both Declaratory Relief & or monetary gains for purpose of one or the other & or both & or the improper handling & wrongdoing of U.S.P.C. et al employees, illegal detention/unlawful detention, invalid conviction & or sentence & or invalid conviction & or sentence & or ineffective assistance of Appeal Counsel under Williams

(ECF No. 27 at 1.) The court construes this document as Plaintiff's Second Amended Complaint

("2d Am. Compl.") against the following defendants:

| | | |
|---|---|---|
| Rebecca Vogel | Charles T. Massarone | Patricia K. Cushwa |
| Olinda Moyd | J. Kelly | Gary N. Kashurba |
| Jequan S. Jackson | District of Columbia | CSOSA |
| Joseph M. Pacholski | Patricia Smoot | |
| Kyndall Johnson | USPC | |

(*See* 2d Am. Compl. at 5-6.) The individual defendants are sued in both their official and

individual capacities. (*See id*. at 5.) Notwithstanding the Second Amended Complaint's vague,

rambling and disorganized presentation, it appears that Plaintiff:

- challenges his Superior Court conviction;
- alleges prosecutorial misconduct;
- raises ineffective assistance of trial and appellate counsel claims; and
- contends that the USPC, its Commissioners and employees violated his constitutionally-protected rights.

Among other relief, Plaintiff demands monetary damages of $100 million.[3] (*See id*. at 4, 6.)

---

[3] Plaintiff also demanded his release from custody, (*see* 2d Am. Compl. at 5,) and declaratory relief, (*see id*. at 4.) In recent filings, Plaintiff notified the Clerk of Court of his release from FCI Fairton on July 20, 2018, (ECF No. 48,) and his current address at the Piedmont Regional Jail in Farmville, Virginia (ECF No. 49.) Because it appears that Plaintiff has served all the time attributable to the revocation of supervised release, the Court denies these claims as moot.

II. DISCUSSION

   A.  <u>Legal Standards</u>

       1. Dismissal Under Rule 12(b)(1)

Federal courts are courts of limited jurisdiction, *see Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004), and the law presumes that "a cause lies outside [the court's] limited jurisdiction" unless the plaintiff establishes otherwise, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  In response to a motion to dismiss a complaint for lack of subject matter jurisdiction, a plaintiff must establish jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).  In evaluating a motion to dismiss under Rule 12(b)(1), the court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting Plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'"  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

       2.  Dismissal Under Rule 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" and "the grounds for the court's jurisdiction" so that each defendant has fair notice of the claim and the ground upon which it rests.  Fed. R. Civ. P. 8(a); *see Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (citing cases).  Rule 12(b)(6) permits a defendant to move for dismissal on the ground that the complaint has failed "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Such a motion "tests the legal sufficiency of a complaint."  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  To withstand a Rule

12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

quotation marks and citation omitted). "A claim has facial plausibility when the Plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* A complaint containing only "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements" cannot survive a motion

to dismiss. *Id.* In addition, the presumption of truth accorded factual allegations at this stage

does not apply to legal conclusions in a complaint, including those "couched" as factual

allegations. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

B. <u>Claims Arising from Proceedings in the District of Columbia Courts</u>

1. Ineffective Assistance of Trial Counsel

Plaintiff's ineffective assistance of trial counsel claim arises from counsel's alleged

failure to call a witness whose "substantial material and exculpatory testimony . . . could [have]

influence[d] the court determination on the probable cause factor," such that Plaintiff "would not

have been held under charges to stand trial." (2d Am. Compl. at 1; *see id.* at 5.) Plaintiff also

contends that "the key . . . drug evidence was not contain[ed] in the evidence bag," and that the

prosecutor used "inflammatory" language "and promised/mislead the jury by evidences that was

not supported by facts & or introduce during . . . trial." (*Id.*) His ineffective assistance of

appellate counsel arises from counsel's alleged failure to raise meritorious arguments on appeal.

(*See id.* at 1-2, 5.)

D.C. Code § 23-110 provides:

A prisoner in custody under sentence of the Superior Court claiming
the right to be released upon the ground that (1) the sentence was

> imposed in violation of the Constitution of the United States or the laws of the District of Columbia, (2) the court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, (4) the sentence is otherwise subject to collateral attack, may move the [Superior Court] to vacate, set aside, or correct the sentence.

D.C. Code § 23-110(a). A plaintiff has no recourse in federal district court "if it appears that [he] has failed to make a motion for relief under this section or that the Superior Court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." D.C. Code § 23-110(g); *see Williams v. Martinez*, 586 F.3d 995, 998 (D.C. Cir. 2009) ("Section 23-110(g)'s plain language makes clear that it only divests federal courts of jurisdiction to hear habeas petitions by prisoners who could have raised viable claims pursuant to [§] 23-110(a)."); *Garris v. Lindsay*, 794 F.2d 722, 727 (D.C. Cir.), *cert. denied*, 479 U.S. 993 (1986).

A claim that trial counsel was ineffective is the sort of claim "routinely brought pursuant to § 23-110." *Rahim v. U.S. Parole Comm'n*, 77 F. Supp. 3d 140, 146 (D.D.C. 2015) (citations omitted); *see Reed v. Thomas*, 287 F. Supp. 3d 6, 10 (D.D.C. 2018). And a claim arising from alleged prosecutorial misconduct is cognizable under D.C. Code 23-110. *Graham v. FCC Coleman USP II Warden*, No. 14-CV-1567, 2016 WL 2962190, at *3 (D.D.C. May 20, 2016) (quoting *Saunders v. United States*, 72 F. Supp. 3d 105, 109 (D.D.C. 2014)), *certificate of appealability denied*, No. 16-5179, 2017 WL 2728390 (D.C. Cir. Jan. 3, 2017); *Briscoe v. Jarvis*, 77 F. Supp. 3d 183, 186 (D.D.C. 2015), *certificate of appealability denied*, No. 15-5098 (D.C. Cir. June 3, 2016). "[T]o the extent that [Plaintiff] is seeking review of claims arising from errors that occurred during his trial and trial counsel's performance, those claims are indeed foreclosed from federal court review by D.C. Code § 23-110 because [Plaintiff] has not

demonstrated the inadequacy of that available remedy." *Coleman v. Ives*, 841 F. Supp. 2d 333, 335 (D.D.C. 2012).

### 2. Ineffective Assistance of Appellate Counsel

A claim of ineffective assistance of appellate counsel falls outside the scope of D.C. Code § 23-110. *See Williams*, 586 F.3d at 998; *Streater v. United States*, 429 A.2d 173, 174 (D.C. 1980) (per curiam). "[B]ecause the Superior Court lacks authority to entertain a [§] 23-110 motion challenging the effectiveness of appellate counsel, that section is, by definition, inadequate to test the legality of [Plaintiff's] detention." *Williams*, 586 F.3d at 998. Ordinarily, an ineffective assistance of appellate counsel claim is litigated in the District of Columbia Court of Appeals on a motion to recall the mandate. *See Watson v. United States*, 536 A.2d 1056, 1060-61 (D.C. 1987) (en banc). This Court may review a "federal habeas petition asserting ineffective assistance of appellate counsel," but only after a petitioner has "moved to recall the mandate in the [District of Columbia] Court of Appeals." *Williams*, 586 F.3d at 999. Plaintiff does not indicate whether he sought to recall the Court of Appeals' mandate, and absent any showing that he has done so, his ineffective assistance of appellate counsel claim is not properly before this court. *Richardson v. United States*, 999 F. Supp. 2d 44, 49 (D.D.C. 2013) ("Only a petitioner who has moved to recall the mandate may proceed with an ineffective assistance of appellate counsel claim in this Court."); *Chase v. Rathman*, 765 F. Supp. 2d 1, 2-3 (D.D.C. 2011) (noting that petitioner's "apparent failure to seek recall of the mandate does not allow this court to entertain his petition, and it does not render his remedy in the District of Columbia Court of Appeals inadequate or ineffective.").

### C. Plaintiff's Civil Rights Claims

In relevant part, 42 U.S.C. § 1983 provides:

> Every *person* who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia*, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (emphasis added). "The District of Columbia is considered a 'person' for purposes of § 1983." *Jordan v. District of Columbia*, 113 F. Supp. 3d 278, 281 (D.D.C. 2015) (citations omitted). However, § 1983 does not apply to federal government entities or "to federal officials acting under color of federal law." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1104 (D.C. Cir. 2005) (citations omitted); *Rush v. Samuels*, 82 F. Supp. 3d 470, 480 (D.D.C. 2015) (dismissing § 1983 claims against Federal Bureau of Prisons and its Director).

A viable § 1983 claim against a government official in his or her individual capacity requires that a plaintiff "allege the violation of a right secured by the Constitution and laws of the United States, and . . . show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). A complaint must allege that the official was personally involved in the asserted constitutional violation. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a Plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

While "personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985), suits against a government official in his official capacity "'generally represent only another way of pleading an action against an entity of which an officer is an agent,'" *id.* (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). In other words,

"[a] section 1983 suit for damages against municipal officials in their official capacities is thus equivalent to a suit against the municipality itself." *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996) (citing *Kentucky v. Graham*, 473 U.S. at 165-66). A § 1983 claim against a municipality may proceed "only if 'the complaint states a claim that a custom or policy of the municipality caused the violation[.]'" *Pollard v. District of Columbia*, 191 F. Supp. 3d 58, 79 (D.D.C. 2016) (quoting *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C .Cir. 2003)), *aff'd*, 698 F. App'x 616 (D.C. Cir. 2017). "*Respondeat superior* liability does not apply." *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004) (citing *Monell*, 436 U.S. at 694).

### 1. Rebecca Vogel and Olinda Moyd

Although Plaintiff mentions Vogel and Moyd in his Second Amended Complaint, (*see* 2d Am. Compl. at 5, 6,) he fails to allege facts sufficient to state a plausible claim against them. For example, following Vogel's name is an assertion that Plaintiff's probable cause hearing was untimely. (*Id*. at 5.) Plaintiff does not fault Vogel for the timing of a probable cause hearing, and it is unclear whether or how Vogel could have been liable for any constitutional violation Plaintiff might have suffered as a result of the delay. Plaintiff provides an address for purpose of service on Moyd, but his complaint sets forth no factual allegations with respect to Moyd's role in Plaintiff's criminal case or supervision proceedings. And in light of their affiliation with the D.C. Public Defender Service, it does not appear that a § 1983 claim against either Vogel or Moyd could survive because a public defender is not considered a "state actor." *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Harris v. Fulwood*, 947 F. Supp. 2d 26, 29 (D.D.C. 2013) (dismissing § 1983 claims against former attorney with the Public Defender Service for the District of Columbia and law student who represented Plaintiff at probable cause and parole

revocation hearings), *aff'd on other grounds,* 611 F. App'x 1 (D.C. Cir. 2015).  The court concludes that Plaintiff's Second Amended Complaint fails to state a claim against Vogel and Moyd upon which relief can be granted.

### 2. Johnson and CSOSA

Plaintiff's allegations regarding Johnson are limited to the decision she and her supervisor made requiring Plaintiff to submit to urine testing three times per week and to perform community service during his term of supervised release.  (2d Am. Compl. at 4.)  He mentions CSOSA apparently for the sole purpose of identifying Johnson's affiliation and role as Plaintiff's CSO.  (*See* 2d Am. Compl. at 6.)  Absent from the Second Amended Complaint, however, are any factual allegations to support a plausible claim against CSOSA or against Johnson in either her official or individual capacity.

### 3. District of Columbia

A § 1983 claim against the District may proceed only if there exists a municipal custom or policy, the implementation of which caused the violation of constitutionally-protected rights. *See Elkins v. District of Columbia*, 690 F.3d 554, 564 (D.C. Cir. 2012) ("Case law has established that a municipality can be held liable only for constitutional violations committed by an employee who acted according to a city 'policy or custom' that was 'the moving force' behind the violation.") (citing *Monell*, 436 U.S. at 694)).  The fatal pleading defect of Plaintiff's Second Amended Complaint is its failure to allege facts describing or suggesting the existence of a municipal custom or policy resulting in the violation of a constitutional right.  *See, e.g., Hampton v. Comey*, 139 F. Supp. 3d 1, 6 (D.D.C. 2015) (dismissing § 1983 claim against Prince George's County, Maryland because complaint "is devoid of any allegation that the unidentified officer's

alleged misconduct grew out of a custom, policy, or practice of the County"). The absence of factual allegations regarding the District of Columbia warrants dismissal of any claim Plaintiff purports to raise against it.

### 4. Massarone, Kelley, Smoot, Cushwa, Kashurba and Jackson

Based on a careful review of the Second Amended Complaint, the court identifies no factual allegations to support a legal claim against Massarone, Kelley, Smoot, Cushwa, Kashurba, or Jackson. While each of these defendants may have played a minor role in Plaintiff's supervision revocation proceedings, Plaintiff does not identify what action each individual took or how each action violated Plaintiff's constitutional rights. Therefore, the court dismisses any claim Plaintiff purports to raise against these defendants in their individual capacities. *See, e.g., Haight v. O'Bannon*, 102 F. Supp. 3d 179, 181 (D.D.C. 2015) (dismissing individual capacity claims brought against Chief of Police "[b]ecause the complaint lacks any allegations that [she] was personally involved in the single incident at issue"); *James v. District of Columbia*, 869 F. Supp. 2d 119, 122 (D.D.C. 2012) (dismissing *sua sponte* § 1983 claim against police sergeant in his individual capacity where "nothing in the complaint suggests that [the sergeant] was involved in the acts underlying the Plaintiff's claims," leading the Court to conclude "that the Plaintiff has not stated a plausible claim for relief" as against him).

To the extent that Plaintiff brings a claim against these defendants and Pacholski in their official capacities, the court treats the claims as if Plaintiff had brought them against the USPC itself. "It is elementary that 'the United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Sovereign immunity extends to

government agencies and to their employees sued in their official capacities. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Clark v. Library of Congress*, 750 F.2d 89, 103 (D.C. Cir. 1984) ("Sovereign immunity . . . bar[s] suits for money damages against officials in their official capacity absent a specific waiver by the government."). And the United States has not waived its immunity for alleged constitutional violations. *See Meyer*, 510 U.S. at 483-86.

Plaintiff would be no more successful in his demand for monetary damages as against any Commissioner or employee in his official capacity, or against the USPC itself. *See, e.g., Ray v. Smoot*, 168 F. Supp. 3d 111, 114 (D.D.C. 2016) (dismissing § 1983 complaint against Parole Commission Chairperson in her official capacity as barred under doctrine of sovereign immunity). There is no clear waiver that renders the USPC subject to liability under § 1983. "Despite its role in administering parole for D.C. Code offenders, the Commission retains the immunity it is due as an arm of the federal sovereign." *Settles*, 429 F.3d at 1106.

### 5. Pacholski

USPC hearing examiners "act under color of District of Columbia law when dealing with D.C. Code violators and, when they do, "are amenable to suit under § 1983 in . . . their individual capacities." *McIntyre v. Fulwood*, 892 F. Supp. 2d 209, 216 (D.D.C. 2012) (citing *Fletcher v. District of Columbia*, 370 F.3d 1223, 1227 (D.C. Cir. 2004), *judgment vacated on reh'g on other grounds*, 391 F.3d 250 (D.C. Cir. 2004). Plaintiff's claim against Pacholski cannot survive, however, because Pacholski is immune from suit.

"Members of the judiciary are entitled to absolute immunity for acts performed in their judicial capacities, and the Supreme Court has extended this immunity to certain officials who perform quasi-judicial functions." *Morgan v. U.S. Parole Comm'n*, 304 F. Supp. 3d 240, 248-49

(D.D.C. 2016). USPC hearing examiners fall into the category of officials. Thus, hearing examiners like Pacholski are "federal agents performing a quasi-judicial function in making a parole determination in [a] specific case, [and therefore] are protected by absolute quasi-judicial immunity from such a suit." *Nelson v. Williams*, 750 F. Supp. 2d 46, 52 (D.D.C. 2010) (citations omitted), *aff'd,* No. 10-5429, 2011 WL 2618078 (D.C. Cir. June 23, 2011); *accord Harris v. Fulwood*, 989 F. Supp. 2d 64, 73 (D.D.C. 2013), *aff'd on other grounds*, 611 F. App'x 1 (D.C. Cir. 2015).

### 6. USPC

According to Plaintiff, USPC violated his constitutionally protected rights when it exercised jurisdiction over him even though the underlying criminal conviction was invalid (*see* 2d Am. Compl. at 4), failed to conduct a timely probable cause hearing (*see id*.,), "denied his right to confrontation of adverse witnesses" (*id*. at 3), and caused his return to custody after he sanctions had been imposed by CSOSA for the same conduct (*id*. at 3.). None of these challenges survives.

First, Plaintiff fails to demonstrate that his Superior Court conviction is unlawful. Nor does Plaintiff show that he ever challenged his conviction in the District of Columbia courts. The USPC is not obliged to verify the validity of an offender's criminal conviction. *See Fardella v. Garrison*, 689 F.2d 208, 211 (4th Cir. 1982). Thus, the USPC had before it what appeared to be a valid judgment and commitment order, pursuant to which it exercised its jurisdiction during Plaintiff's five-year supervision term.

Second, Plaintiff's challenge to the timeliness of his probable cause hearing has been resolved by this court previously. *See McNair v. U.S. Parole Comm'n*, 253 F. Supp. 3d 280, 283 (D.D.C. 2017), *appeal dismissed*, No. 17-5153 (D.C. Cir. Dec. 6, 2017). Under 28 C.F.R.

§ 2.214(a), a probable cause hearing must occur within five days of the execution of the warrant.[4]  (*See* 2d Am. Compl. at 4; Pl's Opp'n at 3.)  Defendants concede that Plaintiff's probable cause hearing was untimely – USPC conducted the hearing on October 14, 2016, or seven days after execution of the warrant.  (Defs.' Mem. at 11-12.)  Nevertheless, Plaintiff has received the process he was due and he has not alleged that he suffered any prejudice as a result of the delay.  *See McNair*, 253 F. Supp. 3d at 283.

Third, with regard to adverse witnesses, the court notes that Plaintiff had an opportunity to request witnesses and declined to do so.  (*See* Defs.' Mem., Ex. 7 at 6-8, ECF No. 42-1 at 21-23.)  Insofar as Plaintiff objects to Pacholski's reliance on lab test results supporting Charge Nos. 1 and 2 (urine specimens testing positive for alcohol and cocaine, respectively) rather than lab technicians' live testimony, "[r]eliance on hearsay in parole revocation proceedings is not per se impermissible."  *Crawford v. Jackson*, 323 F.3d 123, 128 (D.C. Cir. 2003) (citing *Morissey v. Brewer*, 408 U.S. 471, 4890 (1972)).[5]  But if, for example, a revocation decision "were either totally lacking in evidentiary support or were so irrational as to be fundamentally unfair," *Duckett v. Quick*, 282 F.3d 844, 847 (D.C. Cir. 2002) (citations omitted), a Plaintiff might demonstrate a due process violation.  Plaintiff makes no such claim or showing, however, and

---

[4]  "A supervised releasee who is retaken and held in custody in the District of Columbia on a warrant issued by the Commission, and who has not been convicted of a new crime, shall be given a probable cause hearing by an examiner of the Commission no later than five days from the date of such retaking."  28 C.F.R. § 2.214(a).

[5]  "For most purposes, supervised release is the functional equivalent of parole and the law pertaining to the revocation of parole is applicable to the revocation of supervised release." *Anderson v. U.S. Parole Comm'n*, No. 10-CV-1451, 2010 WL 5185832, at *2 (D.D.C. Dec. 22, 2010) (citations omitted).  Proceedings pertaining to supervised release and parole are administrative matters apart from a criminal case, *Smallwood v. U.S. Parole Comm'n*, 777 F. Supp. 2d 148, 150 (D.D.C. 2011) (citing *Morissey v. Brewer*, 408 U.S. 471, 480 (1972)).

does not undermine the validity of the decision reached on the basis of CSO Guest-Uzzle's testimony and supporting documentation.

Lastly, Plaintiff invokes the doctrine of collateral estoppel (*see* 2d Am. Compl. at 3; Pl.'s Opp'n at 4-5), arguing that imposing additional conditions to the term of his supervised release (*i.e.*, submitting urine samples three times each week and performing community service) bar the USPC and its examiners from imposing any additional sanction (*i.e.*, his return to custody), for the same underlying conduct which violated the conditions of his supervised release. Collateral estoppel (issue preclusion) does bar the relitigation of issues previously tried and decided in a court of competent jurisdiction involving the same parties. *See Ashe v. Swenson*, 397 U.S. 436, 443-44 (1970); *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992). However, Plaintiff cites no authority, and the Court is not aware of any, for the proposition that sanctions imposed by a CSO or by CSOSA have the same preclusive effect as court rulings. Nor does Plaintiff support his assertion that a CSO's determinations in any way undermine the USPC's authority to issue a warrant for a releasee's apprehension if the "releasee is alleged to have violated the conditions of his release," 28 C.F.R. § 2.211(a)(2), to cause the warrant's execution, *see* 28 C.F.R. § 2.212, to conduct a probable cause hearing, 28 C.F.R. § 2.214(a), to schedule a revocation hearing if the releasee requests one upon a hearing officer's determination of probable cause, 28 C.F.R. § 2.214(d), to conduct a revocation hearing, *see* 28 C.F.R. § 2.216, to revoke supervision, *see* 28 C.F.R. § 2.218(a)(2), and to determine whether and for how long a releasee shall be returned to prison, *see* 28 C.F.R. § 2.214(b).[6]

---

[6] Plaintiff would fare no better were he to argue that the USPC violated the double jeopardy clause by causing his return to custody. The double jeopardy clause applies only to criminal prosecution and sentencing, not to supervision revocation matters. *See Crowe v. Johnston*, No. 11-2019, 2011 WL 5970881, at *1 (D.D.C. Nov. 29, 2011) ("[I]t is established that 'jeopardy

For the foregoing reasons, the court grants Defendants' Motion to Dismiss Second Amended Complaint, denies Plaintiff's "Motion in Opposition to Defendants['] Answer to Plaintiff['s] Amended Complaint and his "Motion under Writ Madam[us] to Have Prompt Evidentiary Hearing on the Matters at Hand That Can Be Viewed By Transcripts, and dismisses this civil action.  An Order is issued separately.

DATE:  March 6, 2019                    /s/
                                        TANYA S. CHUTKAN
                                        United States District Judge

---

does not attach in probation or parole revocation proceedings because they are not new criminal prosecutions but rather continuations of the original prosecutions which resulted in probation or parole.'") (quoting *Hardy v. United States*, 578 A.2d 178, 181 (D.C. 1990)); *Brown v. U.S. Parole Comm'n*, 713 F. Supp. 2d 11, 14 (D.D.C. 2010) (noting that "the USPC's decisions to revoke petitioner's parole do not implicate the Double Jeopardy Clause").